UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GLEN MACLEAN,

                                         **No. 10-CV-0306(MAT)**
                                         **DECISION AND ORDER**

                  Petitioner,

     -vs-

DONNA LEWIN, Acting Superintendent,

               Respondent.
_____

## I.   Introduction

Glen MacLean ("MacLean" or "Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being held in state custody in violation of his federal constitutional rights. Petitioner was convicted in October 2008, following a jury trial in Livingston County Court on charges of first degree reckless endangerment; driving while intoxicated; and a number of related charges. Petitioner was in custody when he filed his petition but since has been released to parole.

For the reasons that follow, the Court has jurisdiction to hear the petition. However, none of the claims warrant habeas relief, and therefore the petition is dismissed.

## II.  Factual Background and Procedural History

### A.   Petitioner's Trial

On October 13, 2005, at around 1:40 a.m., in the City of Rochester, New York State Trooper Brent S. Bernard ("Bernard")

observed Petitioner speeding in a red Volvo. T.153-154, 177.[1] Bernard estimated that Petitioner was traveling at about 55 miles per hour in a 30 mile per hour zone. T.153, 155, 208. Bernard engaged his marked patrol car's lights and siren, but Petitioner refused to stop. T.154. Petitioner ran several red lights by the exit ramps from Route 390, eventually reaching speeds of about 75 to 80 miles per hour. T.158. As Bernard continued to follow the car, Petitioner drove erratically in the middle of the roadway. T.160. The roadway was slippery since it had just rained, and there were leaves on the ground. T.212.

Upon entering Livingston County, Petitioner drove at about 90 miles per hour in a 55 mile-per-hour zone. T.162-163. As he neared the end of North Avenue in Avon, two vehicles traveling in the opposite direction were forced to drive off the roadway to prevent a crash. T.163-64. At or near Ross Lane, where Petitioner was traveling about 85 miles per hour in a 30 mile-per-hour zone, a vehicle heading in the opposite direction had to take evasive action to prevent a collision with Petitioner's car. T.164-65.

As Bernard followed Petitioner's car, Village of Avon Police Officer Jason Yasso deployed a spike strip in the vicinity of Rochester Street and East River Road. T.166, 194-95. Petitioner

---

[1] Numbers preceded by "T." refer to pages from the transcript of Petitioner's trial.

drove over the strip, which deflated the two front tires of the Volvo. T.167.

Undeterred, Petitioner kept driving. He ignored a stop sign and turned onto West Main Street without signaling a turn. His car almost completely entered the opposite lane of traffic before finally coming to a stop. T.167, 196, 214. The car-chase lasted about fifteen or twenty minutes and covered about twenty miles. T.181, 187, 217.

When Petitioner emerged from his eighteen-year-old red Volvo stationwagon, Bernard noticed a strong odor of alcohol on his breath. Petitioner's eyes were bloodshot, glassy, and watery, and he was mumbling and uncooperative. T.169, 217. When asked his name, Petitioner responded, "[Y]ou know who[.]" T.182. Petitioner refused to take a pre-screening breath test and blow into a straw to confirm the presence of alcohol in his mouth. He also refused to take a field sobriety test. T.169-70, 217.

After Petitioner was arrested and taken back to the police barracks, he was advised that if he refused to submit to a chemical test to determine his blood-alcohol content, his license would be suspended immediately and revoked, regardless of whether he was found guilty of the charge for which he was being arrested. Petitioner was informed that his refusal to submit to the chemical test could be used against him at trial. T.176. Petitioner stated that he understood. Id. When asked if he was willing to take the

chemical test, he stated, "No, I'm not going to sink my own ship." T.176.

After the jury returned a verdict convicting Petitioner of the charges described above, he was sentenced on October 24, 2008, to an indeterminate sentence of two and one-third to seven years for first-degree reckless endangerment, to be served concurrently with a determinate sentence of one year for driving while intoxicated. Petitioner received sentences of conditional discharges with respect to the remaining convictions.

Petitioner's conviction was unanimously affirmed on direct appeal. People v. MacLean, 48 A.D.3d 1215 (App. Div. 4th Dept.), leave denied, 10 N.Y.3d 866 (N.Y.), reconsideration denied, 11 N.Y.3d 790 (N.Y. 2008). Petitioner's pro se collateral post-conviction applications in state court were unsuccessful.

### B.    The Petition Before this Court

In his timely petition, MacLean raises a veritable laundry list of alleged errors involving the trial judge, trial counsel, appellate counsel, and the prosecutor. Respondent argues that many of MacLean's claims are unexhausted, or must be deemed exhausted but procedurally defaulted, or are subject to a procedural default due to the state court's reliance upon an adequate and independent state ground. Respondent argues that, in any event, all of the contentions raised by Petitioner lack merit.

For the reasons that follow, the petition is dismissed.

-4-

## III. Jurisdiction

### A.   "In Custody" Requirement of 28 U.S.C. § 2254(a)

On May 3, 2010, while this petition was pending, Petitioner was released on parole. "The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'" Maleng v. Cook, 490 U.S. 488, 491 (1989) (quotation omitted) (citing 28 U.S.C. § 2254(a) (emphasis in original)). Here, MacLean was incarcerated when he filed the instant petition, and he thus meets the "in custody" requirement of the habeas statute. Carafas v. LaVallee, 391 U.S. 234, 238 (1968).

### B.   Mootness

MacLean's release to parole supervision raises the question of whether the petition satisfies Article III, § 2 of the U.S. Constitution, by presenting a live "case or controversy." E.g., Spencer v. Kemna, 523 U.S. 1, 7 (1998). "[W]here the issues presented by a party in an action are no longer 'live,' or the party lacks a legally cognizable interest in the outcome, the federal action is properly dismissed as moot." City of Erie v. Pap's A.M., 529 U.S. 277, 287, (2000). When a term of imprisonment has expired, "some concrete and continuing injury other than the now-ended incarceration or parole-some collateral consequence of

the conviction-must exist if the suit is to be maintained." Spencer, 523 U.S. at 7.

In Sibron v. New York, 392 U.S. 40 (1968), the Supreme Court, citing various collateral consequences such as deportation, inability to become a citizen, impeachment evidence in future criminal trials, and increased future sentences, asserted a presumption that collateral consequences attach to criminal convictions post-release. Id. at 54-56; accord Perez v. Greiner, 296 F.3d 123, 125 (2d Cir. 2002). In light of Sibron, the Second Circuit has held that "a habeas petition challenging a criminal conviction is rendered moot by a release from imprisonment only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." Perez, 296 F.3d at 125 (internal citations omitted).

At the present time, MacLean continues to bear certain adverse collateral consequences of his criminal conviction in terms of continuing restraints on his liberty, including being subject to supervision by the New York State Division of Parole. Therefore, the Court concludes that the petition is not moot.

## IV.  Exhaustion

It is well-settled that a federal court may not grant habeas relief on a claim unless that claim was presented in federal constitutional terms to the "highest state court from which a decision can be had." Daye v. Attorney Gen'l of N.Y., 696 F.2d 186,

190 n.3 (2d Cir. 1982) (en banc); 28 U.S.C. § 2254(b)(1). Under the 1996 amendments to the federal habeas statutes, courts now have the authority to deny petitions containing unexhausted claims on the merits. See 28 U.S.C. § 2254(b)(2).

"[I]n habeas corpus cases, 'potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit.'" Boddie v. New York State Division of Parole, 288 F. Supp.2d 431, 439 (S.D.N.Y. 2003) (quoting Brown v. Thomas, No. 02 Civ. 9257, 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003)). Here, MacLean's claims may be readily disposed of on the merits. Therefore, in the interest of judicial economy, the Court will not discuss the exhaustion and procedural default issues further and will proceed directly to the merits of MacLean's claims.

## III. Analysis of the Petition

### A.    Judicial Misconduct

#### 1.    Imposition of Harsh and Excessive Sentence

It is well-established that a sentence of imprisonment that is within the limits of a valid state statute generally does not present a constitutional question cognizable on federal habeas review. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing Underwood v. Kelly, 692 F. Supp. 146 (E.D.N.Y. 1988), aff'd mem., 875 F.2d 857 (2d Cir. 1989)). For his conviction of Reckless

Endangerment in the First Degree (N.Y. Penal Law § 120.25), a Class D Felony, Petitioner was eligible to receive an indeterminate sentence, with the maximum term ranging from three to seven years, and the minimum period of imprisonment being one-third the maximum sentence. N.Y. Penal Law § 70.00(2)(d), (3)(b). Petitioner was also eligible for an alternative definite sentence of one year or less, N.Y. Penal Law § 70.00(4), or probation for a period of five years, id., § 65.00(1), (3). For his conviction of Driving While Intoxicated (V.T.L. § 1192(3)), an Unclassified Misdemeanor, Petitioner was eligible to receive a fine of $500 to $1000 or up to a year in jail, or both. N.Y. Vehicle & Traffic Law § 1193 (1)(b)).

Here, the trial court imposed the maximum sentence authorized by law, an indeterminate sentence of two and one-third to seven years for first-degree reckless endangerment to be served concurrently with a year sentence and a $1,000 fine with respect to Petitioner's conviction for driving while intoxicated. Although the sentence was the maximum permissible, it nevertheless was within the statutory range. Therefore, no constitutional issue is presented by Petitioner's sentencing claim.

### 2. Erroneous Consideration of a Pre-Plea Investigation Report at Sentencing

Petitioner contends that it was improper for the trial court to use a pre-plea investigation report in lieu of a presentence report when he was sentenced. This claim fails to raise an issue of federal constitutional magnitude and, in any event, lacks merit. As

the Appellate Division found, "the 'pre-plea investigation report' contain[ed] all of the information required in a presentence report." People v. MacLean, 48 A.D3d at 1216-17 (quotation omitted).

### 3. Denial of Assigned Counsel in Connection with Petitioner's C.P.L. § 440.10 Motions

Petitioner has no constitutional right to have counsel appointed when prosecuting a state-court collateral challenge to his conviction. E.g., Coleman v. Thompson, 501 U.S. 722, 756-57 (1991) ("Given that a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review, it would defy logic for us to hold that [petitioner] had a right to counsel to appeal a state collateral determination of his claims of trial error.").

### 4. Excessive Bail

Petitioner contends that the County Court committed misconduct because it allegedly set pre-trial excessive bail. This claim is moot because the Eighth Amendment protection against excessive bail may only be vindicated prior to trial. See Murphy v. Hunt, 455 U.S. 478, 481-482 (1982) (criminal defendant's 42 U.S.C. § 1983 suit challenging his bail as excessive was moot after he was convicted in the underlying criminal case); United States v. Bostick, 400 F.2d 449, 451 (5th Cir. 1982) ("The question whether the bail set before trial was excessive became moot after the judgment of conviction was rendered."), cert. denied, 393 U.S. 1068

(1969); <u>Lombard v. Mazzuca</u>, No. 00-CV-74622(JG), 2003 WL 22900918, at *6 (E.D.N.Y. Dec. 8, 2003) (habeas claim that pretrial bail was excessive became moot once petitioner was convicted).

### 5.   Erroneous Jury Instructions

MacLean contends that the County Court committed misconduct because it did not properly instruct the jury on the meaning of reckless endangerment and intoxication. To show a denial of his due process right to a fair trial, the petitioner must demonstrate that the instruction was not merely "undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973); <u>accord</u> <u>DelValle v. Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002). The burden faced by a defendant in a collateral challenge to jury instructions is "even greater than the showing required to establish plain error on direct appeal." <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977).

As Respondent argues, Petitioner has not come close to meeting this burden. The trial court delivered careful and correct instructions on first-degree reckless endangerment in accordance with New York's pattern Criminal Jury Instruction ("CJI")[2] for that crime. The court instructed the jury that a person commits first-degree reckless endangerment when he (1) engages in conduct

_____

[2]

See T.269-272; <u>compare</u> <u>with</u> CJI Reckless Endangerment in the First Degree, available at <u>http://</u>www.nycourts.gov/cji/2-PenalLaw/120/120-25.pdf.

which creates a grave and unjustifiable risk that another person's death will occur; (2) when he or she is aware of and consciously disregards that risk; and (3) when that grave and unjustifiable risk is of such nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. T.269-270. Significantly, Petitioner never lodged any objection or requested supplemental instructions concerning that charge. Nor did Petitioner object when the court recharged the jury on the elements of this offense during deliberations, pursuant to a the jury's request. T.301-304.

With regard to the jury instruction on intoxication, Petitioner appears to claim that the trial court should have instructed the jury in accordance with N.Y. Penal Law § 15.25 (stating that a defendant may offer evidence of, and the court is permitted to instruct that the jury may consider, intoxication of the defendant whenever it is relevant to negate an element of the crime charged). See People v. Gaines, 83 N.Y.2d 925, 925 (N.Y. 1994).

Intoxication, however, "may not negate a 'reckless' culpable mental state." William C. Donnino, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 39, Penal Law § 15.25, at p. 131; accord, e.g., People v. Johnson, 277 A.D.2d 702, 704 (App. Div. 3d Dept. 2000) ("Although intoxication is not a defense to a criminal charge, evidence of intoxication may be offered to negate

any element of a crime charged with the caveat that such proof will not negate the presence of a 'reckless' mental state."); People v. Colonna, 147 A.D.2d 582, 537 N.Y.S.2d 877, 877 (App. Div. 2d Dept. 1989) ("Voluntary intoxication does not negate the element of recklessness necessary to sustain a conviction of manslaughter in the second degree."). Because Petitioner was charged with a crime involving a mens rea of recklessness, as opposed to an intentional act, he was not entitled to have the court instruct the jury under N.Y. Penal Law § 15.25.

### 6. Denial of Request for Substitute Assigned Counsel

Petitioner contends that the County Court committed misconduct because it denied his request for substitution of assigned counsel. This claim is meritless.

In a pre-trial conference held on August 24, 2006, Petitioner stated that he had been unable to get in contact with defense counsel on several occasions and, after he complained, counsel was now "bending over backwards" for him. Transcript dated August 24, 2006 ("8/24/06 Tr.") at 2-3). In response, defense counsel stated that MacLean was upset because counsel had been unable to obtain a more favorable plea disposition. Id. at 4-5. The trial court informed that in the absence of any indication that counsel had not capably represented him, MacLean had not established an adequate basis for the appointment of new counsel. Therefore, the court determined that the Public Defender's Office would continue to

represent him, although he was free to hire his own attorney. Id. at 4-6. On direct appeal, the Appellate Division found that the trial court "properly denied his request for substitution of assigned counsel" because MacLean "did not indicate that there was 'a serious possibility of good cause for substitution' but, rather, made only vague assertions that defense counsel was not in frequent contact with him and did not aid in his defense." People v. MacLean, 48 A.D.3d at 1217 (quotation and citation omitted). The Appellate Division did not apply federal law in objectively unreasonable manner in dismissing this claim.

"While the Sixth Amendment guarantees the right to counsel for criminal defendants, indigent defendants do not have a veto over who is appointed to defend them, provided that appointed counsel's representation is adequate." Felder v. Goord, 564 F. Supp.2d 201, 220 (S.D.N.Y. 2008) (citing Caplin & Drysdale v. United States, 491 U.S. 617, 624 (1989); United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997) (noting that "[b]ecause the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing")). To obtain substitute counsel, the defendant must "show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972).

The gravamen of MacLean's complaint seems to be that counsel could not obtain a more favorable plea disposition for him. That, however, is insufficient to demonstrate "good cause" where there is no indication that counsel was not ably representing Petitioner's interests during plea negotiations. Although MacLean asserted that counsel had not been communicated enough with him until he filed a grievance, MacLean admitted that counsel then began to communicate with him more frequently. Because there is no basis for finding that any conflict was so great that it resulted in a "total lack of communication preventing an adequate defense[,]" United States v. John Doe No. 1, 272 F.3d 116, 122 (2d Cir. 2001), the trial court did not abuse its discretion in denying MacLean's request for the substitution of counsel.

## B.   Denial of Equal Protection

Petitioner contends that he was singled out for prosecution in violation of the Equal Protection Clause of the Constitution. "In our criminal justice system, the Government retains broad discretion as to whom to prosecute." Wayte v. United States, 470 U.S. 598, 607 (1985). "The requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'" United States v. Armstrong, 517 U.S. 456, 464 (1996). In order to establish a violation of equal protection based upon selective enforcement, a petitioner must show (1) that he was "selectively treated" as compared to others who are "similarly situated" and

(2) that such selective treatment was based upon "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad fait intent to injury a person." <u>LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester</u>, 40 F.3d 587, 590 (2d Cir. 1994) (quoting <u>LeClair v. Saunders</u>, 627 F.2d 606, 609-10 (2d Cir. 1980) (quotation marks omitted)).

Petitioner must demonstrate (1) that, "compared with others similarly situated, [he] was selectively treated; and (2) [that] such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." <u>Crowley v. Courville</u>, 76 F.3d 47, 52-53 (2d Cir. 1996). A litigant's burden of proof in a selective-prosecution case is quite heavy. <u>Armstrong</u>, 517 U.S. at 464 ("Our cases delineating the necessary elements to prove a claim of selective prosecution have taken great pains to explain that the standard is a demanding one.").

Here, as Respondent argues, the record is devoid of evidence demonstrating that Petitioner, who is a white male,[3] was prosecuted on any impermissible basis such as race or ethnicity. As there is no basis to conclude that the prosecutor's decision "was based on

---

[3]

   <u>See</u> New York State Department of Correction Inmate Information available at http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WINQ130.

an unconstitutional motive[,]" <u>Wade v. United States</u>, 504 U.S. 181, 185-86 (1992), Petitioner's selective prosecution claim under the Equal Protection Clause must fail.

**C.    Violation of the Fifth Amendment's Double Jeopardy Clause**

Petitioner contends that his prosecution in Livingston County was barred by double jeopardy because petitioner was allegedly charged and convicted of Vehicle and Traffic Law violations in Monroe County before he was indicted and prosecuted in Livingston County. This claim is wholly without merit.

The Double Jeopardy clause protects an accused against a second prosecution for the same offense after acquittal or conviction and against multiple punishments for the same offense. <u>See</u> U.S. Const. amends. V, XIV; <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969). Although Petitioner contends he was charged and convicted of V.T.L. offenses in Monroe County before he was indicted in Livingston County, Petitioner has failed to provide any documentation concerning that Monroe County prosecution. Petitioner's failure to provide record support for this claim "represents a failure on his part to both comply with Rule 2(c) of Rules Governing Section 2254 cases as well as to shoulder his burden of proof in the present action." <u>White v. Herbert</u>, No. 9:02-CV-0439 (NPM), 2006 WL 3728878, at *4 (N.D.N.Y. Dec. 15, 2006)(collecting cases).

To the extent that Petitioner is relying on traffic summonses issued in the Town of Rush and the Town of Henrietta, in Monroe County, Petitioner's claim fails to establish a critical component of a Double Jeopardy claim—a criminal conviction. First, with regard to the Town of Henrietta, Petitioner was issued sixteen V.T.L. summonses (fourteen for passing red signals and two for speeding). <u>See</u> Declaration of Thomas Litsky, Esq. ("Litsky Decl."), ¶ 5. Petitioner never went to trial or pled guilty, and those charges remained pending as of the time he filed his habeas petition. Litsky Decl., ¶ 5. In the Town of Rush, Petitioner was issued seven summonses (two for failure to stop at stop signs, three for speeding, and two for failure to obey traffic control lights). <u>Id.</u>, ¶ 6. Again, Petitioner was neither tried nor convicted of those offenses. On December 28, 2009, the Monroe County District Attorney's Office withdrew the charges. <u>Id.</u> Petitioner has thus failed to establish that he was tried, convicted, and punished twice for the same offense.

**D.   Prosecutorial Misconduct**

Petitioner contends that the prosecutor engaged in numerous instances of misconduct throughout his criminal proceeding, from the prosecutor's charging decisions to summation. These claims uniformly lack merit.

### 1.    Misconduct in the Charging Decision

MacLean alleges that the counts charging him with Failure to Stay in Lane were duplicative and violated his due process rights. It is well settled that a challenge to the sufficiency of a state indictment is not cognizable on habeas review unless the indictment falls below constitutional standards. Walter v. Superintendent, No. 9:06-CV-0128 (GHL), 2008 WL 4163122 (N.D.N.Y. Sept. 4, 2008) ("Challenges to the sufficiency of a state indictment are not generally cognizable on habeas review.") (collecting cases). An indictment satisfies constitutional standards if "it charges a crime (1) with sufficient precision to inform the defendant of the charges he must meet and (2) with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." DeVonish v. Keane, 19 F.3d 107, 109 (2d Cir. 1994) (citation and quotations omitted).

Here, the three counts alleging Failure to Stay in Lane, met that standard. The fifth through seven counts of the indictment tracked the statutory language in V.T.L. § 1128(a), and alleged that on October 12, 2006, Petitioner, while operating a motor vehicle on East River Road in the Town of Avon, County of Livingston, "failed to stay in the driving lane of the roadway" at three different times. There was nothing erroneous in the language of the indictment. Moreover, the jury convicted Petitioner of only two of these traffic violations, for which Petitioner was sentenced

to conditional discharges. Thus, he cannot demonstrate how he was prejudiced.

### 2.   Misconduct in the Grand Jury

MacLean's claims alleging improprieties in his grand jury proceeding are not cognizable on habeas review because he was convicted by a petit jury after a fair trial. See United States v. Mechanik, 475 U.S. 66, 68 (1986) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt . . ." Id. at 70 (footnote omitted).

Following the reasoning of Mechanik, the Second Circuit held in Lopez v. Riley, 865 F.2d 30 (2d Cir.1989), that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in federal court." Lopez, 865 F.2d at 32 (holding that habeas petitioner's "claims of impropriety before the grand jury in this case concern[ing] the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" . . . were "cured in the trial before the petit jury, which convicted"). Accordingly, the guilty verdict rendered

by the jury after MacLean's trial precludes habeas review of his claims relating to the grand jury proceeding

### 3.   Misconduct at Trial

#### a.   Failure to Effectuate Petitioner's Right to a Speedy Trial

Petitioner's "speedy trial" claim based upon N.Y. Crim. Proc. Law § 30.30 is not cognizable on federal habeas review. Cooke v. Graham, No. 06-CV-3053 (DLI)(RER), 2009 WL 3111790, at *7 (E.D.N.Y. Sept. 28, 2009) (collecting cases).

Petitioner's claim regarding a violation of his Sixth Amendment right to a speedy trial lacks merit. In Barker v. Wingo, 407 U.S. 514, 530 (1972), the Supreme Court established a balancing test that requires consideration of the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. Petitioner was arrested in October 2005, and tried in October 2006. The one year delay, standing alone, is insufficient for a finding of a speedy trial violation. The Second Circuit has held that delays from seventeen months to six years do not amount to a deprivation of the right to a speedy trial. Flowers v. Warden, Conn. Corr. Inst., Somers, 853 F.2d 131, 133 (2d Cir.1988) (collecting cases). Furthermore, the record establishes that a portion of the one-year period was attributable to Petitioner's failure to appear in court on March 16, 2006; Petitioner's request for a pre-plea investigation; and motion

practice. Finally, Petitioner has failed to establish prejudice by the delay.

### b.   Double Jeopardy Violation

As discussed above in this Decision and Order, there was no violation of MacLean's rights under the Fifth Amendment's Double Jeopardy Clause. Thus, there is no basis for finding that the prosecutor committed misconduct in this regard.

### c.   Prejudicial Remarks During the Opening Statement and During Summation

When considering a claim of prosecutorial misconduct, a constitutional violation will be found only if the challenged remarks "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). "Substantial prejudice" is assessed by considering "'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'" Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981), cert. denied, 456 U.S. 989 (1982)).

Assuming arguendo that the prosecutor's remarks were improper, they could not have negatively affected the verdict, given that the proof against Petitioner was simply overwhelming. As the Appellate Division observed, "[t]he record contain[ed] uncontroverted

evidence that, while intoxicated, [Petitioner] drove down the middle of roads that were slippery with wet leaves at speeds ranging from 75 to 95 miles per hour, disregarded traffic signals, and caused three vehicles to pull off the road in order to avoid colliding with [Petitioner's] vehicle." People v. MacLean, 48 A.D.3d at 1216. In other words, there is no possibility that, but for the challenged remarks, the jury's verdict would have been more favorable to Petitioner.

### E. Ineffective Assistance of Trial Counsel

To demonstrate a violation of his Sixth Amendment right to the effective assistance of counsel, a petitioner must show that his attorney's representation was deficient in light of prevailing professional norms and that prejudice inured to him as a result of that deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the first prong, counsel's conduct must have "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result[.]" Id. at 686. As to the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional" conduct, the result of the trial would have been different. Id. at 694. The Court addresses trial counsel's alleged errors and omissions in turn below.

### 1. Failure to File an Omnibus Motion

Petitioner states that trial counsel unreasonably failed to file an omnibus motion. This claim is belied by the record. In an effort to secure a favorable plea disposition, counsel requested a pre-plea investigation by the probation department.  Although the probation department recommended a sentence of probation, defense counsel was unable to persuade the prosecutor to agree with that recommendation. Accordingly, defense counsel filed an omnibus motion, which included a request for the court to inspect the grand jury minutes and for a hearing to determine the extent Petitioner could be cross-examined about prior convictions.

### 2.   Failure to Request a Bill of Particulars

Although counsel did not make a request for a bill of particulars as part of Petitioner's omnibus motion, Petitioner has alleged how he was prejudiced, and the Court cannot discern prejudice on the record before it. See Schwartz v. Connell, No. 05 Civ. 10305(RPP), 2006 WL 3549660, at *6 (S.D.N.Y. Dec. 6, 2006) ("[A]ssuming that Petitioner is correct that it was ineffective assistance of counsel for his trial attorneys to fail to show him the bill of particulars, he is not able to show that any prejudice flowed from that failure.").

### 3.   Failure to Investigate and Call Witnesses

Habeas courts are discouraged from second-guessing counsel's defense strategy, and "[t]he decision whether to call any witnesses

on behalf the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 957 (1987). Here, Petitioner has provided no details whatsoever concerning the witnesses that should have been called, the substance of their proposed testimony, and how it would have changed the outcome of his trial. "[C]onclusory allegations regarding counsel's failure to prepare a defense are insufficient in support of an ineffective assistance claim." Russell v. Rock, No. 08-CV-1894(BMC) (RER), 2009 WL 1024714, at *3 (E.D.N.Y. Apr. 15, 2009); see also Hartley v. Senkowski, No. CV-90-0395, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992 ("In light of th[e] demanding [Strickland] standard, petitioner's vague and conclusory allegations that counsel did not prepare for trial . . . carry very little weight.").

### 4. Failure to Contest False and Inconsistent Testimony

Petitioner claims that trial counsel was ineffective because he did not address allegedly false and inconsistent testimony by Troopers Bernard and Clark concerning the correct time of the car-chase, the speed of Petitioner's car, and the manner in which Petitioner exited his car. However, this claim is factually baseless.

Both troopers testified that they began pursuing Petitioner at about 1:39 or 1:40 a.m. T. 177, 208. Both troopers testified that

when Petitioner's car entered Livingston County, it was traveling at about 90 to 95 miles per hour in a 55 mile-per-hour zone. T.162-63, 213. Finally, both troopers testified consistently that after Petitioner's car came to a stop after driving over the "spike strip," they, along with a third officer from the Avon police department, directed Petitioner out of his car at gunpoint. T.167-68, 216.

Petitioner has not established that the officers presented inconsistent testimony, much less false testimony. Counsel committed no errors in regard to his cross-examination of these witnesses.

### 5.    Failure to Raise N.Y. Penal Law § 270.25

Petitioner claims that defense counsel was ineffective because he did not familiarize himself with, and raise, N.Y. Penal Law § 270.25, governing Unlawful Fleeing a Police Officer in a Motor Vehicle in the Third Degree. That statute, which created a new offense under the Penal Law , became effective on November 1, 2006, nineteen days after Petitioner's arrest, Therefore, it had no bearing on Petitioner's defense, and counsel was not ineffective in failing to raise it.

### 6.    Failure to Object to Jury Instructions

Petitioner faults trial counsel for failing to object to allegedly erroneous jury instructions. However, as discussed above in this Decision and Order, there were no improprieties in the

instructions given to the jury by the trial court. Trial counsel cannot be faulted to make a meritless objection, and Petitioner was not prejudiced.

### 7.    Failure to Argue Repugnancy of the Verdicts

According to Petitioner, trial counsel erred in failing to object to allegedly repugnant verdicts–the convictions for first degree reckless endangerment and driving while intoxicated.  The verdicts on these charges were not repugnant or inconsistent as a matter of state or federal law, and counsel therefore was not unreasonable in failing to lodge an objection.  Repugnancy or inconsistency in a verdict "is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled."  People v. Loughlin, 76 N.Y.2d 804, 806 (N.Y. 1990).  "One can drive recklessly without being intoxicated and, as the jury apparently found, one can drive while intoxicated without being reckless[.]" People v. Starowicz, 207 A.D.2d 994, 617 N.Y.S.2d 100, 101 (App. Div. 4th Dept. 1994) (rejecting claim of repugnant verdicts) (citing Loughlin, 76 N.Y.2d at 806).

### 8.    Failure to Assert a Double Jeopardy Argument

Petitioner faults trial counsel for failing to assert a claim that his right to be protected from Double Jeopardy was violated. Presumably, Petitioner is referring to the stand-alone Double

Jeopardy argument discussed above in this Decision and Order. As previously explained, Petitioner did not have a meritorious Double Jeopardy claim. Thus, trial counsel was not ineffective in failing to raise such an argument, and Petitioner was not prejudiced by counsel's omission.

### 9. Failure to Request a Suppression Hearing

Petitioner contends that trial counsel should have requested a suppression hearing with regard to the statements he made in connection with his refusal to submit to a chemical test. T.176. Although defense counsel could have moved for a suppression hearing, it would have been pointless. As Trooper Bernard's testimony at trial established, Petitioner "was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal." N.Y. Vehicle & Traffic Law § 1194(2)(f). Trial counsel was not unreasonable in declining to make a motion that had no chance of success, and Petitioner was not prejudiced by counsel's decision. See People v. Gangale, 249 A.D.2d 413, 414, 671 N.Y.S.2d 148, 149 (App. Div. 2d Dept. 1998) ("[T]he County Court did not err in denying suppression of evidence of his refusal to submit to a blood test, since there was ample evidence before the court to support the conclusion that the defendant was given clear and unequivocal warning of the effect of his refusal to submit to the blood test, and that he persisted in his refusal to take it[.]") (citing N.Y. Vehicle & Traffic Law

§ 1194(2)(b), (f); <u>People v. Cragg</u>, 71 N.Y.2d 926, 927 (N.Y. 1988); other citations omitted).

### 10.  Failure to Contest Increase in Bail Amount

Petitioner faults trial counsel for failing to file a petition for a writ habeas corpus under Article 70 of the Civil Practice Law and Rules after the County Court raised his bail. Had trial counsel filed a state habeas petition, review of the trial court's decision would have been limited to its bail determination was arbitrary, capricious, or an abuse of discretion. <u>People ex rel. Masselli v. Levy</u>, 126 A.D.2d 501, 503, 511 N.Y.S.2d 236 (App. Div. 1st Dept. 1987) (holding that the function of a habeas corpus court "is solely to determine whether the constitutional or statutory standards inhibiting excessive bail or arbitrary refusal of bail are violated").  Petitioner's bail was increased because he was arrested on charges in Monroe County while released on bail with regard to the Livingston County charges. Petitioner additionally had an undisputed history of failing to make his court appearances. The trial court thus was well within its discretion in raising the bail amount, and a state petition for habeas corpus would have been unsuccessful.

### 11.  Failure to Convey the Plea Offer Accurately

Petitioner's contention that defense counsel did not accurately convey the plea offer is not supported by the record, which indicates that Petitioner was present in court on June 29,

2006, and August 24, 2006, when the prosecutor extended an offer of an indeterminate sentence of two to six years on a plea to first-degree reckless endangerment and the misdemeanor driving while intoxicated charge. Trial counsel and Petitioner discussed the offer, but Petitioner rejected it.

### 12. Failure to Request the Police Radio Transmission

Petitioner contends that trial counsel erroneously failed to request production of the radio transmission broadcast by the police during the car-chase. Petitioner has not explained how this evidence would have materially assisted his defense.

### 13. Failure to Address Police Misconduct

Petitioner contends, in conclusory fashion, that the police engaged in a high speed car-chase with him in violation of unspecified New York State Police policies and procedures and that trial counsel was ineffective because he did not address this alleged misconduct. Petitioner has not substantiated his contention that the troopers violated any policies and procedures that might exist concerning high speed pursuits. To the contrary, the record reflects that troopers effectuated the stop of Petitioner's vehicle without injuries to the public, the officers, or Petitioner.

### 14. Failure to Object to the Pre-Plea Investigation Report

Petitioner contends that trial counsel unreasonably failed to object to the use of a pre-plea investigation report, rather than a pre-sentence report, at sentencing. Petitioner cannot demonstrate

how he was prejudiced by counsel's omission because, as the
Appellate Division found, "the 'pre-plea investigation report'
contain[ed] all of the information required in a presentence
report." People v. MacLean, 48 A.D3d at 1216-17 (quotation
omitted).

### 15. Failure to Address a Jurisdictional Issue

In his habeas petition, the word "jurisdiction" appears in the
list of alleged errors by trial counsel. Even under the liberal
pleading standard by which pro se submissions are judged, this is
entirely too vague to state a colorable claim for habeas relief.

### 16.  Cumulative Effect of Alleged Errors

Taken singly or together, the alleged "errors" committed by
defense counsel were not examples of professionally unreasonable
performance. Nor did they cause prejudice to MacLean's defense.
Accordingly, MacLean is not entitled to habeas relief on his claim
that his defense counsel was ineffective.

### F.    Ineffective Assistance of Appellate Counsel

The Strickland standard applies to appellate counsel. Mayo v.
Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S.
820 (1994). Petitioner claims that appellate counsel was
ineffective because he did not raise certain issues on appeal.
However, appellate counsel does not have a duty to raise every
colorable claim on appeal but rather may use his or her
professional judgment to determine which issues provide the

-30-

greatest chance of success on appeal. <u>Jones v. Barnes</u>, 463 U.S. 745, 751-753 (1983). Petitioner's claim that appellate counsel was ineffective is patently meritless.

First, Petitioner contends that appellate counsel was ineffective because he did not address alleged instances of (1) police misconduct; (2) judicial misconduct; and (3) ineffective assistance of counsel.  As discussed above, these claims plainly lack merit as a matter of state or federal law. Thus, appellate counsel was not unreasonable in failing to include them in the brief. More important, because there is no reasonable probability that the outcome of MacLean's appeal would have been different had they been asserted.  Appellate counsel assert a claim of prosecutorial misconduct; however, the Appellate Division found it to be unpreserved.

Petitioner then lists a slew of sections out of the Criminal Procedure Law. The Court construes this portion of his memorandum of law to mean that appellate counsel should have fashioned arguments concerning alleged violations of these statutory provisions.[4]

---

    4

    "Repugnant Verdict CPL 330.30(5), 300.40(5), Grand Jury Minutes CPL 240.20(A-K), Defendants Right to Testify At Grand Jury CPL 240.20(1)(B), Bill of Particulars CPL 200.95(1)(b), Timeliness of Request 200.96(3), Double Jeopardy CPL 40.20(2), Speedy Trial CPL 255.20(1), Motions to Reduce Charges 210.20, 210.35, Motion to Dismiss Indictment CPLP 190.50(c), Motion to Dismiss Grand Jury Procedure CPL 210.20, 210.35. Prosecutor Failed to Notify Defendant of Grand Jury CPL 190.50(5)(a), Motion to Dismiss Where Proceeding was Illegally Constituted where Defendant did not Testify CPL 210.35, Prosecutor Misconduct at Grand Jury CPL 210.35(50, Prosecutor Failure to Turn Over Grand Jury Minutes CPL 30.30, Failure to Inform Defendant of Statements CPL 30.20, Speedy Trial CPL 170.30(2),

The "claims", however, are no more than vague and conclusory allegations. Petitioner fails to set forth any facts, description, or specific citation to the trial transcript or record with respect to these claims. Nor does he assert any legal authority for his "claims." A habeas petition should be denied "where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." United States v. Malcolm, 432 F.2d 809, 812 (2d Cir.1970); accord Brown v. People of State of New York, No. 04-CV-1087 NG VVP, 2006 WL 3085704, at *7 (E.D.N.Y. Oct. 30, 2006) ("Petitioner's allegation is no more than a vague and conclusory allegation. Petitioner fails to set forth any facts, description, or specific citation to the trial transcript with respect to these alleged errors. Even construing the petition liberally, the court is unable to decipher a factual or legal basis, other than those previously asserted, for this claim."); Skeete v. People of New York State, No. 98 Civ. 5384 2003 WL 22709079, at *2 (E.D.N.Y.2003)("vague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief."). See generally Rule 2(c) of Rules Governing Section 2254 Cases (stating that a habeas petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground").

---

170.30(1)(c), 170.45, 210.20(1)(g), 210.30(2), 210.45, 255."

Petitioner's Memorandum of Law at 6.

**V.     Conclusion**

For the reasons stated above, Glen MacLean's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal <u>in forma pauperis</u>.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:     July 20, 2011
           Rochester, New York